**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

NICHOLAS KONTODIAKOS,

     Plaintiff,

v.                                        Civil Action No. 2:23-cv-459

EXPERIAN INFORMATION SOLUTIONS INC.;
CELLCO PARTNERSHIP dba VERIZON WIRELESS,

     Defendants.

## COMPLAINT AND DEMAND FOR JURY TRIAL

     Plaintiff Nicholas Kontodiakos by and through his attorneys, for his Complaint against

Defendants Experian Information Solutions Inc. ("Experian") and Cellco Partnership dba Verizon

Wireless ("Verizon") states as follows:

## PRELIMINARY STATEMENT

     1.     This is an action for actual, statutory, and punitive damages, costs, and attorneys'

fees brought pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*

Inaccurate consumer credit reports can cause great harm on the lives of the afflicted. Employers,

landlords, lenders and insurance companies make decisions based on these reports. Indeed, these

reports are a significant factor when determining whether an individual receives the job, the

apartment, the loan, or the favorable insurance policy.

     2.     The FCRA was enacted to ensure accurate credit reports. The FRCA thus required

consumer reporting agencies ("CRAs"), like Experian, "to follow reasonable procedures to assure

maximum possible accuracy." 15 U.S.C. § 1681e(b). The FCRA's accuracy provision demands

that CRAs take actual steps to ensure the maximum possible accuracy of the information they

report. It is not enough for them to simply parrot information they receive from entities like Verizon, particularly where a consumer makes a dispute about information reported.

3.     The Consumer Financial Protection Bureau ("CFPB") has noted, "experience indicates that [CRAs] lack incentives and under-invest in accuracy." Consumer Fin. Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, March 2, 2017). This is particularly true as to how Experian has complied with its now 50-year-old obligation to conduct a meaningful accuracy investigation. Experian has been repeatedly sued by consumers, sanctioned by regulators, and reprimanded by both district and appellate courts to do more than an automated parroting of what its creditor-customers instruct.

4.     If a dispute about the information arises, the dispute is transmitted to the party furnishing the information, and the CRA must conduct a reasonable reinvestigation into the disputed status of the consumer's credit file. Inaccurate information must be deleted from the consumer's credit file. 15 U.S.C. § 1681i.

5.     Defendant Experian reported inaccurate past-due account information on a Verizon account not tied to Mr. Kontodiakos, thus violating Section 1681e(b). When he disputed the inaccuracies, Experian did not reasonably investigate thereby violating Section 1681i. Accordingly, Mr. Kontodiakos brings claims against Experian for violating Sections 1681e(b) and 1681i.

6.     Defendant Verizon on the other hand furnished information about Mr. Kontodiakos without fully and properly investigating his disputes and the information provided by the CRAs in violation of Sections 1681s-2(b)(1)(A)-(B). Instead, Verizon published the inaccurate information and failed to correct and update or delete the inaccurate information reported on Mr. Kontodiakos

in violation of Sections 1681s-2(b)(1)(C), (E). Accordingly, Mr. Kontodiakos brings claims against Verizon for violating 15 U.S.C. §§ 1681s-2(b)(1)(A)-(C), (E).

7.      Further, the FCRA has long required that when a furnisher, such as Verizon, receives a consumer's dispute, it conduct a "detailed" and "systematic" investigation and not a superficial one.  *Johnson v. MBNA*, 357 F.3d 426, 430 (4th Cir. 2004).

8.      Had Defendants followed these legal commands, Mr. Kontodiakos would not have been harmed.

## JURISDICTION & VENUE

9.      This Court has federal question jurisdiction under 28 U.S.C. § 1331 to hear the FCRA claim.

10.     Venue is proper under 28 U.S.C. § 1391(b) and Local Civil Rule 3(C) because "a substantial part of the events or omissions giving rise to the claim[s] occurred" in this District and Division.

11.     Plaintiff Nicholas Kontodiakos is a resident of this District and Division, and each of the Defendants transact business within this District and Division.

## PARTIES

12.     Plaintiff Nicholas Kontodiakos is a natural person and a "consumer" as defined by 15 U.S.C. § 1681a(c).

13.     Defendant Experian is a foreign corporation, authorized to conduct business in the Commonwealth of Virginia through its registered agent.

14.     Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f), and it disburses consumer reports to third parties for monetary compensation.

15.     Cellco Partnership represents that it is a general partnership formed under the laws of the State of Delaware and does business as Verizon Wireless.

16.     Verizon is a "furnisher" of information as defined and governed by 15 U.S.C. § 1681s-2.

## FACTUAL ALLEGATIONS

### *The Fair Credit Reporting Act Requires Substantive Investigations and Prohibits Mere "Parroting" of Experian's Creditor-Customers*

17.     "Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry." *See* S. Rep. No. 91-517, at 3 (1969); 116 Cong. Rec. 35941 (1970) (statement of Sen. Proxmire); *Id*. at 36570 (statement of Rep. Sullivan). "In enacting FCRA Congress adopted a variety of measures designed to insure that agencies report accurate information." *Dalton v. Capital Associated Indus., Inc*., 257 F.3d 409, 414-15 (4th Cir. 2001). "In recognition of the critical role that CRAs play in the credit markets and the serious consequences borne by consumers because of inaccurate information disseminated in consumer credit reports prepared by CRAs, Congress placed on a CRA what can only be described as very high legal duties of care, set forth . . . in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A)." *Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

18.     "Section 1681e(b) sets forth the CRAs' overall du[t]y:

(b) Accuracy of report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

*Id*.

19.     Section 1681i(a), on the other hand, requires much more from a CRA after a consumer has placed it on notice of an inaccuracy through his dispute:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly . . . of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . before the end of the 30-day period[.]

15 U.S.C. § 1681i(a)(1)(A).

20.     Section 1681i(a) imposes "a duty . . . to make reasonable efforts to investigate and correct inaccurate or incomplete information brought to its attention by the consumer." *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991). "[T]he term 'investigation' is defined as '[a] detailed inquiry or systematic examination' or 'a searching inquiry.'" *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1303 (11th Cir. 2016) (citations omitted).

21.     It has long been the law that a CRA, such as Defendant Experian, does not fulfill its "grave responsibility" to conduct a reinvestigation of a consumer's dispute by merely contacting the creditor who supplied the disputed item. *E.g.*, *Pinner v. Schmidt*, 805 F.2d 1258, 1262 (5th Cir. 1986) (concluding it was unreasonable for a credit reporting agency to contact only the creditor in its reinvestigation of a disputed debt); *Collins v. Experian Info. Sols., Inc*., 775 F.3d 1330, 1333 (11th Cir.), *on reh'g sub nom. Collins v. Equable Ascent Fin., LLC*, 781 F.3d 1270 (11th Cir. 2015); *Carlisle v. Nat'l Commercial Servs., Inc.*, No. 1:14-cv-515-TWT- LTW, 2016 WL 4544368, at *9 (N.D. Ga. July 22, 2016), *report & recommendation adopted*, No. 1:14-cv-515-TWT, 2016 WL 4532219 (N.D. Ga. Aug. 29, 2016) ("[A] reasonable factfinder could find that merely contacting [the creditor] was not sufficient to determine whether the disputed information was inaccurate").

22.     That "grave responsibility" imposed by the FCRA reinvestigation requirement "must consist of something more than merely parroting information received from other sources." *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

23.     Further, as Experian is aware, this Court has held that even though the term "investigation" is not used in Section 1681e(b), Defendant Experian has a duty to conduct a reasonable initial investigation pursuant to Sections 1681e(b) and 1681i(a). This duty is "central" to the CRA's duties of care under that portion of the Act:

> This conclusion flows from the plain meaning of both [Sections 1681e(b) and 1681i(a)]. For example, Section 1681e(b) requires (1) "reasonable procedures" that (2) "assure" (3) "maximum possible accuracy." To "assure" means "to make sure or certain: put beyond all doubt." *Webster's Third New International Dictionary* 133 (1993). "Maximum" means the "greatest in quantity or highest degree attainable" and "possible" means something "falling within the bounds of what may be done, occur or be conceived . . . ." *Id.* at 1396, 1771. It is difficult to imagine how "maximum possible accuracy" could be guaranteed without an adequate investigation. Likewise, Section 1681i(a)(1)(A) requires a "reinvestigation," necessarily implying that an "investigation" was required to have been performed in the first instance.

*Burke*, 2011 WL 1085874, at *4.

24.     It has long been the law—since 1970—that:

> [W]hen a CRA learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise), it must review its procedures for assuring accuracy and take any necessary steps to avoid future problems. Similarly, it should establish procedures to avoid reporting information from its furnishers that appears implausible or inconsistent.

Fed. Tr. Comm'n, 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT (July 2011), at 67.[1]

25.     Today, furnishers such as Defendant Verizon, have their own independent duties under the FCRA. Principally, those duties are found at 15 U.S.C. § 1681s-2.

---

[1] *Available at* https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf.

26.     When a furnisher receives a consumer's dispute through a CRA, such as Experian, it is required to conduct an investigation of that dispute.  15 U.S.C. §1681s-2(b).  That investigation must be substantial and not superficial.  As the Fourth Circuit explained in *Johnson v. MBNA*, 357 F.3d 426, 430 (4th Cir. 2004):

> The key term at issue here, "investigation," is defined as "[a] detailed inquiry or systematic examination." Am. Heritage Dictionary 920 (4th ed. 2000); *see* Webster's Third New Int'l Dictionary 1189 (1981) (defining "investigation" as "a searching inquiry").

### *Plaintiff Kontodiakos Discovers and Disputes Experian's Reporting of Derogatory Information Regarding a Verizon Account on His Credit Reports*

27.     Mr. Kontodiakos served several years in the United States Navy until his recent retirement. He is a disabled veteran.

28.     He applied for a loan with Vantage Recreational Finance on March 9, 2022, to purchase a boat after his retirement.

29.     He was denied financing.

30.     Mr. Kontodiakos was denied because the bank found an outstanding bill from Verizon that went to collections. This information was inaccurate because he did not open an account or authorize anyone to open an account on his behalf with Verizon. In fact, he did not have any debt associated with Verizon.

31.     In an effort to be proactive, Mr. Kontodiakos took steps to remedy this problem.

32.     First, he filed an incident report with the Norfolk Police Department on March 10, 2022. He stated in his report that he was a victim of identity theft and cited the Verizon account indicating an outstanding balance of $4,850.

33.     Plaintiff disputed the inaccurate Verizon account to Experian on one or more occasions during the last two years.  For example, and without limitation, Mr. Kontodiakos sent a detailed dispute letter to Defendant Experian on December 15, 2022.

34.     In each instance, Experian's dispute results revealed that the Verizon account remained and had been verified.

35.     By February 21, 2023, Experian's report continued to include the derogatory Verizon collection amount.

### *Defendant Experian Did Not and Does Not*
### *Conduct Any Investigation of Consumer Disputes*

36.     Unknown to Plaintiff Kontodiakos until this lawsuit, it has long been the practice of Defendant Experian to refuse to perform the statutorily mandated FCRA investigation. Instead, Defendant Experian delegates all action in response to consumer disputes to overseas boiler-room employees.

37.     Experian uses a sister company, Experian Chile (or Experian Costa Rica) to process its mail disputes.[2]

38.     The Experian affiliate uses low-wage employees to work quickly to process consumer dispute letters received, skimming the letters, and selecting one or a handful of codes

---

[2] Defendant Experian outsources its dispute procedures to an affiliated company, Experian Services Chile, S.A, in Santiago, Chile. Experian long ago lost the argument that testimony from these dispute agents requires more than a garden-variety Rule 30 notice. *Calderon v. Experian Info. Sols., Inc.*, 290 F.R.D. 508, 510 (D. Idaho 2013). Such was confirmed in a recent case in this District with Plaintiff's Counsel opposing, wherein Experian produced its Chilean dispute investigator for remote deposition through a Rule 30(b)(1) notice without opposition. *Sublett v. Nissan of Richmond, LLC, et al.*, No. 3:20-cv-156 (E.D. Va.). To the extent Experian would argue here that it cannot produce its Chilean dispute agents pursuant to a Rule 30 notice, Plaintiff will pursue his Section 1681i failure-to-investigate claim on the same theory—no investigation was conducted by the CRA.

from a dropdown menu to best describe the consumer's detailed dispute information in two (2) digits.

39.     These dispute agents with Experian Chile are not allowed to do any of the following: contact the consumer; use the telephone or e-mail to investigate; research; contact the furnisher directly; or take longer than five (5) minutes per dispute.

40.     The dispute processing agents are not hired to perform actual FCRA investigations. Instead, the agent's sole responsibility is to manage the process of reading consumer dispute letters, selecting one of a handful of common dispute codes from a drop-down menu, and then clicking that code.

41.     In fact, Defendant Experian strongly encourages consumers to make disputes through its online website. When consumers do so, the consumer has to click one of just a few available dispute reasons (e.g., "The balance and/or past due amount are/is incorrect"). The online dispute then is outputted into the "e-OSCAR" system described below without ever touching human hands or being read by human eyes at Experian. It gets sent to a creditor-customer for its sole review and consideration.

42.     Though incorrect, Defendant Experian, claims that it cannot direct, control, manage or reliably influence the employees of its respective third-party outsource vendor.

43.     Experian therefore did not internally conduct any reinvestigation of Plaintiff's disputes.

### *Defendant Experian Forwarded Plaintiff Kontodiakos' Dispute to Defendant Verizon, Which Did Nothing*

44.     Upon Mr. Kontodiakos' dispute of the Verizon account, Experian, on or about a date(s) better known to Experian, forwarded the dispute to Verizon using an electronic system called "e-OSCAR."

45.     e-OSCAR is an industry-wide process where disputes are electronically communicated to furnishers, and dispute results are sent back to the CRA.

46.     e-OSCAR is also the system by which Verizon has agreed it will accept such consumer disputes from CRAs.

47.     Under such circumstances, Verizon became obligated under the FCRA to investigate Plaintiff's disputes.

48.     Mr. Kontodiakos' disputes of the Verizon account should have triggered Verizon to reinvestigate the complaint. Unfortunately, Verizon verified its inaccurate derogatory reporting. This response confirmed that Experian communicated Plaintiff's disputes to Verizon and the information furnished to Experian was at all times inaccurate.

49.     Defendant Verizon thus failed to reasonably reinvestigate Plaintiff's disputes that it received from Experian in violation of § 1681s-2(b)(1)(A) and (B) of the FCRA.

50.     Defendant Verizon further violated 15 U.S.C. § 1681s-2(b)(1)(E) when it failed to correct the account after receiving Plaintiff's disputes from Experian prior to the commencement of this action.

### *Plaintiff Kontodiakos' Suffered Actual Harm*

51.     Experian continued to report the derogatory Verizon account on Plaintiff's credit reports, despite being notified that this information was false.

52.     Plaintiff's attempts to resolve these matters with Defendants were to no avail.

53.     In fact, Plaintiff's credit was significantly destroyed by Defendants' refusal to correct the inaccurate reporting.

54.     As a result of the inaccurate credit reporting, Plaintiff has suffered damages, including, but not limited to:

a.     Stress associated with being denied credit and associated delays in applying for future credit;

b.     Monies lost by attempting to fix his credit, e.g., communication costs, postage for disputes, etc;

c.     Loss of time attempting to cure the error;

d.     Mental anguish, stress, aggravation, and other related impairments to the enjoyment of life; and

e.     Stress associated with attempting to resolve this matter.

### *Defendants' Conduct Was Willful*

55.     The FCRA allows for a remedy for a "willful" violation. A willful act or violation includes, "not only knowing violations of [the statute], but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007). A "reckless" action includes conduct whereby "the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id*. at 69.

56.     Proof of willfulness includes, for example, "evidence that other consumers have lodged complaints similar to" the one made by Plaintiff and a failure to make the correction right away. *Dalton*, 257 F.3d at 418; *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 151 (4th Cir. 2008).

57.     As detailed above, the FCRA sections at issue here, and informative guidance, have been around now for over 50 years. The language of Section 1681e(b) has not changed. Defendants' dispute investigation obligations under Sections 1681i(a) and 1681s-2(b) have not changed since at least 1997. The FCRA's caution of Defendants' "grave responsibilities" to ensure accuracy has not changed.

58.     Experian has received many thousands of disputes and other complaints sufficient to require a reasonable company to at least examine or investigate further before blindly accepting further reporting. Verizon has also been subject to many thousands of consumer complaints and numerous federal lawsuits for the same misconduct alleged here.

59.     Defendants knew or should have known of this dispute and litigation history. They use and have access to PACER to investigate and monitor such consumer complaints.

60.     The CFPB has maintained a Consumer Complaint database since 2011. It receives a small percentage of the total consumer credit reporting complaints made nationwide. Many more complaints are made directly to the Defendants, and/or to other government agencies, attorneys, or non-profit organizations.

61.     Experian regularly receives unredacted consumer dispute details from this database.

62.     Since the database began accepting complaints, the CFPB has sent over 570,000 consumer credit reporting complaints to Experian.

63.     Just in the last twelve (12) months alone, Experian has been sued by consumers alleging violations of the FCRA over 2,000 times.

64.     Most of these lawsuits alleged that the CRAs violated § 1681i(a) by failing to conduct a lawful reinvestigation of the consumer's accuracy dispute. This complaint history has been true for nearly every year over the last decade.

65.     Proportionately similar, Verizon has also been sued in federal court over 400 times for consumer credit claims by consumers—most involving alleged violations of the FCRA.

66.     While the thousands of consumer complaints and hundreds of thousands of consumer disputes alone would have put Experian on notice of the failures of its dispute

investigation procedures in ensuring accuracy, numerous federal district and circuit courts have placed Experian on notice that it may not merely "parrot" what its creditor-customer tells it if the consumer has provided a substantive and detailed dispute.

67.     Experian had actual notice from numerous other courts that its blind "parroting" was unlawful. *See, e.g., Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011); *Centuori v. Experian Info. Sols., Inc.*, 431 F. Supp. 2d 1002, 1008 (D. Ariz. 2006).

68.     Defendants have long had specific notice from courts about their expected conduct in dispute investigations. The seminal circuit court decision addressing Section 1681i(a) and finding that a CRA does not conduct a reasonable reinvestigation of a consumer's substantive dispute if it merely "parrots" its creditor-customer was a Trans Union case. *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997). Trans Union's notice was so substantial that this Court instructed the jury in a Section 1681i(a) trial in which Experian was also a defendant:

> In assessing the issue of notice to Trans Union, you are instructed that, on several occasions since 1997, decisions of federal courts have informed… that the Fair Credit Reporting Act's Requirement for a reasonable reinvestigation must consist of something more than simply the parroting of information received from other sources and/or that a credit reporting agency does not act reasonably by deferring entirely to another source of information, such as a creditor.

*Mullins v. Equifax Info. Servs., LLC*, CIV. 3:05CV888 (E.D. Va. Aug. 27, 2007). Thus, particularly in this Court, Experian was as aware as Trans Union that the procedure to merely "parrot" was unlawful.

69.     Experian has also been repeatedly criticized by federal and state regulators, and consumer groups for the refusal or failure to conduct substantive reinvestigations.

70.     In 2015, a large group of state Attorneys General forced a consent order from CRAs by which they were required to develop procedures necessary to comply with the FCRA.  The AG Settlement required amongst many changes and mandates that the CRAs comply with § 1681i(a).[3]

71.     The AG Settlement also required the CRAs to conduct significant research and data gathering. This included creating a "working group" to address these issues and to develop special procedures to handle disputes like in this case. Notwithstanding these requirements, Experian did not meaningfully comply with the AG Settlement in these regards.

72.     Experian is also aware of substantive and detailed criticism by public interest groups about its automated consumer dispute verification ("ACDV") system. For example, in 2009, the National Consumer Law Center ("NCLC"), the organization that publishes the leading legal treatise in this field, also published a scathing research paper detailing the actual process followed by CRAs when a consumer makes a dispute. That report was updated in 2019. AUTOMATED INJUSTICE REDUX Ten Years after a Key Report, Consumers Are Still Frustrated Trying to Fix Credit Reporting Errors, National Consumer Law Center, February 2019. ("NCLC Report").[4]

73.     The NCLC Report summarized its context:

Ten years ago, the National Consumer Law Center (NCLC) issued Automated Injustice: How a Mechanized Dispute System Frustrates Consumers Seeking to Fix Errors in their Credit Reports, the landmark report on the serious dysfunctions in the American credit reporting system. Since then, the Consumer Financial Protection Bureau (CFPB) began exercising supervision authority over the Big Three credit bureaus (Equifax, Experian, and TransUnion), and started the difficult task of compelling them to reform their procedures and practices. A coalition of more than 30 state Attorneys General reached a breakthrough settlement with the

---

[3]*Available at* https://www.ohioattorneygeneral.gov/Files/Briefing-Room/News-Releases/Consumer-Protection/2015-05-20-CRAs-AVC.aspx.

[4] Available at https://www.nclc.org/images/pdf/credit_reports/automated-injustice-redux.pdf.

credit bureaus in 2015, requiring an array of reforms. Despite these very laudable achievements, the credit bureaus and the companies that supply them with information still have serious problems in ensuring the accuracy of credit reports, affecting millions of American consumers. The dispute process required by the Fair Credit Reporting Act (FCRA) that was intended to fix these problems remains ineffective and biased.

74.     Among many of the CRAs' accuracy failures, the NCLC Report discovered:

- Insufficient Information Conveyed and Considered in Investigation. Credit bureaus use the highly automated e-OSCAR system to convey disputes to furnishers, primarily using shorthand two- or three-digit codes, and at most only a line or two of text in a minority of instances. The credit bureaus use the same four or five codes over 80% of the time.

- Failure to Transmit Information Submitted by the Consumer. Credit bureaus failed to send supporting documentation submitted by consumers to furnishers, in clear violation of the FCRA.

- Perfunctory Credit Bureau Investigations. Credit bureaus limit the role of their employees who handle disputes, or of the foreign workers employed by their offshore vendors, to little more than selecting these two- or three-digit codes. Workers do not examine documents, contact consumers by phone or email, or exercise any form of human discretion in resolving a dispute.

- Credit Bureaus Always Side with Furnishers. Credit bureaus are universally biased in favor of furnishers and against consumers in disputes. In a practice known as "parroting," credit bureaus blindly adopted the response of the furnisher without performing any independent review.

NCLC Report at 6.

75.     While Experian's notice has spanned four decades and over 600,000 public complaints or lawsuits, Verizon's notice has also been substantial.  Verizon has received tens if not hundreds of thousands of consumer disputes, hundreds of federal lawsuits and various other communications that its automated dispute procedures were unlawful.

76.     Further, Verizon and its lawyers regularly review and are on notice of both the FCRA text and its application and interpretation by federal courts.

77.     Verizon was long aware of the seminal decision, *Johnson v. MBNA*, 357 F.3d 426, 430 (4th Cir. 2004).

78.     Despite all this statutory, judicial, regulatory, and public interest notice and criticism, Defendants have refused to change their dispute investigation process because it would cost too much money to do so.

79.     Defendants' procedures imposed on Plaintiff and similarly situated consumers pose an unjustifiable and unreasonable risk of harm that could have been mitigated or avoided with just modest imposition.

## CLAIMS FOR RELIEF

### COUNT I
### *Violation of § 1681e(b) of the FCRA – against Defendant Experian*

80.     Plaintiff Kontodiakos realleges and incorporates the foregoing paragraphs as if fully set out herein.

81.     Defendant Experian willfully violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report and consumer files it published and maintained concerning Mr. Kontodiakos.

82.     As a result of this conduct, action and inaction of Experian, Mr. Kontodiakos suffered damage by loss of credit, loss of the ability to purchase and benefit from a credit, reduction in credit scores, and denial of a loan.

83.     Even after Plaintiff's disputes put Experian on notice of likely inaccuracies and reasons to doubt the correctness of the reporting of its creditor-customers, Experian ignored such information and did not use any human or substantive review to confirm and verify that its procedures were ensuring the maximum possible accuracy of Plaintiff's credit reports.

84.     Experian furnished multiple consumer reports to third parties containing the inaccurate tradeline information and it did so after receiving notice of these inaccuracies.

85.     Experian's conduct, action and inaction were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

86.     As a result of Experian's violations of 15 U.S.C. § 1681e(b), Plaintiff is entitled to recover his actual damages pursuant to 15 U.S.C. § 1681n and/or § 1681o, or in the alternative his statutory damages of $1,000 pursuant to 15 U.S.C. § 1681n.

87.     Mr. Kontodiakos is entitled to recover his costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
### *Violation of § 1681i of the FCRA – against Experian*

88.     Plaintiff Kontodiakos realleges and incorporates the foregoing paragraphs as if fully set out herein.

89.     Experian willfully violated 15 U.S.C. § 1681i by failing to delete inaccurate information in Plaintiff's consumer file after receiving actual notice of such inaccuracies; by failing to conduct a lawful reinvestigation; by failing to forward all relevant information to Plaintiff's creditors and/or creditors' attorneys; by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; and by relying upon verification from a source it has reason to know is unreliable.

90.     As a result of Experian's violations of 15 U.S.C. § 1681i, Plaintiff is entitled to recover his actual damages pursuant to 15 U.S.C. § 1681n and/or § 1681o, or in the alternative his statutory damages of $1,000 pursuant to 15 U.S.C. § 1681n.

91.     Experian's conduct, action, and inaction was willful, rendering Experian liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

92.     Plaintiff Kontodiakos is entitled to recover his costs and attorneys' fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT III
### *Violation of §§ 1681s-2(b)(1)(A) and (B) of the FCRA – against Verizon*

93.     Plaintiff Kontodiakos realleges and incorporates the foregoing paragraphs above as if fully set out herein.

94.     Defendant Verizon violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully conduct a reasonable investigation of the Plaintiff's disputes after the said disputes were forwarded to Verizon by Experian.

95.     On one or more occasions within the past two years, by example only and without limitation, Verizon violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by Experian.

96.     Based on the manner in which Experian responded to Plaintiff's disputes— representing that Verizon had "verified" the supposed accuracy of its reporting— Plaintiff alleges that Experian did in fact forward the Plaintiff's disputes via ACDV to Verizon.

97.     Verizon understood the nature of Plaintiff's disputes when it received the ACDVs from Experian.

98.     Notwithstanding the above, Verizon follows a standard and systematically unlawful process when it receives an ACDV dispute. Basically, all Verizon does is review its own internal

computer screens for the account and repeat back to the ACDV system the same information it already reported to Experian.

99. When Verizon receives a consumer dispute through e-OSCAR, it does not conduct a substantive review of any sort to determine whether the information already in its computer system itself is inaccurate.

100. As a result of Verizon's violations of 15 U.S.C. §§ 1681s-2(b)(1)(A) and (B), Plaintiff suffered actual damages including but not limited to loss of credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

101. As a result of Verizon's violations of 15 U.S.C. § 1681s-2(b), Plaintiff is entitled to recover his actual damages pursuant to 15 U.S.C. § 1681n and/or § 1681o, or in the alternative his statutory damages of $1,000 pursuant to 15 U.S.C. § 1681n.

102. Verizon's FCRA violations were willful, rendering it liable for actual, statutory damages and punitive damages in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n. In the alternative, Verizon was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o.

103. Plaintiff Kontodiakos is entitled to recover his costs and attorneys' fees from Verizon in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### COUNT IV
### *Violation of §§ 1681s-2(b)(1)(C) and (E) of the FCRA – against Verizon*

104. Plaintiff Kontodiakos realleges and incorporates the foregoing paragraphs as if fully set out herein.

105. On one or more occasions within the past two years, by example only and without limitation, Verizon violated 15 U.S.C. § 1681s-2(b)(1)(C) by failing to correctly report the results of an accurate investigation to Experian.

106.     Defendant Verizon violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to accurately correct and update or delete Plaintiff's information after receiving Plaintiff's disputes from Experian prior to the commencement of this action. This failure to correct Plaintiff's information resulted from Verizon's failure to investigate as articulated herein, after Verizon received notice of Plaintiff's disputes from Experian.

107.     On information and belief, Plaintiff alleges that the procedures followed regarding Plaintiff's FCRA dispute through e-OSCAR were the procedures that Verizon intended its employees or agents to follow.

108.     As a result of this conduct, action and inaction of Verizon, Plaintiff suffered actual damages, including but not limited to loss of credit, loss of the ability to purchase and benefit from a credit, reduction in credit scores, and denial for a loan.

109.     As a result of Verizon's violations of 15 U.S.C. § 1681s-2(b), Plaintiff is entitled to recover his actual damages pursuant to 15 U.S.C. § 1681n and/or § 1681o, or in the alternative his statutory damages of $1,000 pursuant to 15 U.S.C. § 1681n.

110.     Verizon's conduct, action and inaction was willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

111.     Plaintiff Kontodiakos is entitled to recover his costs and attorneys' fees from Verizon in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## <u>JURY DEMAND</u>

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff Kontodiakos hereby demands a trial by jury on all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment for actual, statutory, and punitive damages against Defendants; for his attorney's fees and costs; for prejudgment and post-judgment interest at the judgment rate; and such other relief the Court deems just and proper.

September 15, 2023

Respectfully Submitted,
**NICHOLAS KONTODIAKOS**

By:     */s/Leonard A. Bennett*
Leonard A. Bennett, Esq., VSB #37523
Craig C. Marchiando, Esq., VSB #89736
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Ste. 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: craig@clalegal.com

Drew D. Sarrett, VSB # 81658
**CONSUMER LITIGATION ASSOCIATES, P.C.**
626 East Broad Street, Suite 300
Richmond, VA  23219
Telephone: (804) 905-9900
Fax: (804) 905-9902
Email:  drew@clalegal.com

Kristi C. Kelly, VSB #72791
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, Virginia 22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167
Email: kkelly@kellyguzzo.com

Nathaniel D. Yu
Third Year Law Student
George Mason University
Antonin Scalia Law School
Third Year Practice Motion Forthcoming

*Counsel for Plaintiff*