**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**NICHOLAS KONTODIAKOS,**

**Plaintiff,**

**v.** **Case No. 2:23-cv-459**

**EXPERIAN INFORMATION SOLUTIONS, INC.,**
***et al.*,**

**Defendants.**

## OMNIBUS OPINION AND ORDER

Before the Court are three motions filed by Defendants Experian Information Solutions, Inc. ("EIS") and ConsumerInfo.com, Inc. ("CIC") d/b/a Experian Consumer Services' ("ECS") (collectively, "Defendants"): (1) Motion for Judgment on the Pleadings; (2) Motion to Deny Class Certification (collectively, "Motions"); and (3) Motion to Stay Discovery, Or, In the Alternative, a Protective Order Pending the Resolution of Defendants' Motion to Deny Class Certification and Motion for Judgment on the Pleadings ("Motion to Stay Discovery"). ECF Nos. 104, 106, 113. The Motions are fully briefed, and the Court dispenses with oral argument. E.D. Va. Loc. Civ. R. 7(J). For the following reasons, Defendants' Motion for Judgment on the Pleadings and Motion to Deny Class Certification, ECF Nos. 104, 113, are **DENIED,** and Defendants' Motion to Stay Discovery, ECF No. 106, is **DENIED** and **DISMISSED AS MOOT**.

## I. FACTUAL & PROCEDURAL HISTORY

This matter arises from a putative class action alleging violations of the Fair Credit Reporting Act ("FCRA") and state common law tort claims. *See* ECF No. 39 at ¶¶ 1–4, 69–188. Plaintiff alleges that he was the victim of identity theft, in which an unknown fraudster created a

CreditWorks account in Plaintiff's name and that, as a result, Plaintiff's credit information was obtained and used without his authorization. *See id.* ¶ 2. CreditWorks is a consumer credit-monitoring service offered by CIC, while the credit information used to provide the service is furnished by EIS. *See id.* ¶¶ 2, 9–10, 95. Plaintiff seeks to represent a class of individuals whose CreditWorks accounts were allegedly opened without their authorization. *See id.* ¶¶ 4, 95–188.

As against EIS and CIC, the Amended Complaint raises the following counts:

> **COUNT IV – Violation of § 1681b(a) of the FCRA, *Experian and CIC Class Claim***
> [. . .]
> 137. Experian and CIC willfully violated 15 U.S.C. § 1681b(a) by willfully and recklessly accessing, attaching, publishing and selling Plaintiffs' and Nationwide Class members' credit profile without a permissible purpose or authorization under the FCRA.
> [. . .]
>
> **COUNT V – Violation of § 1681e(a) of the FCRA, *Experian and CIC Class Claim***
> [. . .]
> 144. Experian and CIC willfully and negligently violated 15 U.S.C. § 1681e(a) by failing to maintain reasonable procedures designed to limit the furnishing of consumer reports to the purposes listed under section 1681b of this title by failing to make reasonable efforts to implement procedures that would verify the identity of a new or prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report.
> [. . .]
>
> **COUNT VI – Violation of § 1681e(e) of the FCRA, *CIC Class Claim***
> [. . .]
> 149. CIC willfully and negligently violated 15 U.S.C. § 1681e(e) by procuring consumer reports for the purpose of resale (or any information in the report) when it failed to disclose the identity of the end-user of the report and did not comply with 1681b as to a permissible purpose allowed under the FCRA.
> [. . .]
>
> **COUNT VII – Violation of § 1681b(f) of the FCRA, *CIC Class Claim***
> [. . .]
> 153. Alternatively, CIC willfully and negligently violated 15 U.S.C. § 1681b(f) when consumer reports were obtained without an authorized purpose in accordance with 1681b.
> [. . .]

> **COUNT VIII – Negligence, *CIC Class Claim***
> 157. Upon accepting and storing the Personal Identifying Information of Plaintiffs and Class members in its computer systems and on its networks, CIC undertook and owed a duty to Plaintiffs and Class members to exercise reasonable care to secure and safeguard that information with commercially reasonable and standard methods. CIC knew that the Personal Identifying Information was private and confidential and should be protected as private and confidential.
> [. . .]
> 166. CIC breached its duties to Plaintiffs and Class members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Personal Information of Plaintiffs and Class members.
> [. . .]
> 173. Through CIC's acts and omissions described in this Complaint, including CIC's failure to provide adequate security and its failure to protect Personal Information of Plaintiffs and Class members from being foreseeably captured, accessed, copied, disseminated, stolen and misused, CIC unlawfully breached its duty to use reasonable care to adequately protect and secure Personal Information of Plaintiffs and Class members during the time it was within CIC's possession or control.
> [. . .]

*Id.* at 28–38. As relief, Plaintiff seeks class certification, individual and classwide damages, attorney's fees and costs under the FCRA, declaratory relief, pre- and post-judgment interest, and any other appropriate relief. *Id.* at 39.

**A. Motion for Judgment on the Pleadings**

On July 31, 2026, Defendants filed their Motion for Judgment on the Pleadings. ECF No. 113. Defendants argue that Counts IV through VIII of the Amended Complaint should be dismissed with prejudice on several grounds. They argue that ECS is not a consumer reporting agency ("CRA") under the FCRA because CreditWorks provides consumers access to their own credit information rather than furnishing reports to third parties; that EIS had a permissible purpose to furnish Plaintiff's credit file based on the written authorization provided through CreditWorks enrollment and, alternatively, had reason to believe there was a permissible purpose; and that the related FCRA claims fail because Plaintiff identifies no deficient procedures or resale transaction.

ECF No. 114 at 5–10. Defendants further argue that Plaintiff fails to adequately plead a willful FCRA violation necessary for statutory and punitive damages and that his common-law negligence claim is preempted by the FCRA. *Id.* at 10–11.

Plaintiff filed his Opposition on August 3, 2026, arguing that Defendants' motion contradicts the Amended Complaint's allegations, relies on evidence outside the pleadings, and raises factual issues inappropriate for resolution under Rule 12(c). ECF No. 118 at 10–29. Plaintiff contends that EIS and ECS operate as a single, integrated CRA and that the alleged disclosure of his credit file to an identity thief constitutes furnishing a consumer report to a third party. *Id.* at 12–17. Plaintiff further argues that an identity thief's purported enrollment cannot constitute Plaintiff's written instructions or authorization under the FCRA and that whether Defendants had reason to believe the request was permissible is a factual question that cannot be resolved on the pleadings. *Id.* at 17–25. He maintains that the Amended Complaint adequately and specifically alleges willfulness through allegations of known security vulnerabilities, prior notice of fraudulent access, and Defendants' failure to address those issues, and that his negligence claim concerns data security rather than credit reporting and therefore is not preempted by § 1681h(e) or alternatively falls within that provision's exception for malice. *Id.* at 25–29. Finally, Plaintiff argues that the motion is untimely, having been filed more than eighteen months after Defendants answered the Amended Complaint, and that the Smith declaration and November 2025 Terms of Use should be excluded or, if considered, the motion should be converted to one for summary judgment with a reasonable opportunity for discovery.[1] *Id.* at 9–11.

---

[1] In orders issued on October 7, 2026, and October 8, 2026, the Court granted Plaintiff's Motion to Strike the Declaration of Dan Smith or, in the Alternative, for Relief Under Rule 56(d) and denied Defendants' Request for Judicial Notice in Support of Motion for Judgment on Pleadings. ECF Nos. 125–26. As a result of those orders, neither the Declaration of Dan Smith nor the 2025 Terms of Use are considered as part of the Court's resolution of the instant Motions. Defendants subsequently filed a motion for the Court

Defendants filed their reply on August 10, 2026, arguing that Counts IV, V, and VI fail as a matter of law because CreditWorks is a self-access service through which consumers obtain their own file rather than a service that produces reports to third parties. ECF No. 120 at 4–5. Defendants further argue that this conclusion is unaffected by Defendants' corporate structure, the alleged identity theft, or Plaintiff's alternative reseller and user theories. *Id.* at 6–8. Defendants maintain that the Amended Complaint's incorporation of the CreditWorks Terms of Use supplies an independent permissible purpose and defeats Count IV, and that Count VIII—Plaintiff's negligence claim—is preempted and therefore also fails as a matter of law. *Id.* at 9–13.

**B. Motion to Deny Class Certification**

The Amended Complaint alleges both individual claims on behalf of Plaintiff and class claims under Federal Rule of Civil Procedure 23(b)(2) and (b)(3). ECF No. 39 at ¶ 136. The proposed nationwide class consists of consumers who were victims of identity theft, where they did not in fact open CreditWorks accounts and their credit reports were furnished to third parties by Experian and CIC:

> All natural persons who (a) were the subject of a consumer report furnished by Experian to CIC within the five years before the filing of this action; (b) where CIC furnished the report to a third party; (c) where the consumer about whom the report related disputed the tradeline(s) for an account(s) opened on or after the date on which CIC records show the person as having signed up for CreditWorks based on a claim of not his/hers, identity theft or fraud; (d) where the consumer did not in fact open the CreditWorks account (the "Nationwide Class").
>
> Excluded from the class are all persons who have signed a written release of their claim, and/or are counsel in this case, or employed by the Federal Judiciary.

*Id.* Plaintiff alleges that the proposed class exceeds "hundreds or thousands of consumers" whose identities can be readily determined from Defendants' existing records and that common

---

to reconsider its previous ruling and a memorandum in support. ECF Nos. 127–28. Finding no good cause to reconsider its ruling, the Court denied Defendants' Motion for Reconsideration. ECF No. 131.

questions predominate whether CIC had a permissible purpose to furnish the credit reports, maintained reasonable procedures under the FCRA, and acted willfully. *Id.* ¶¶ 137–38. Plaintiff further alleges that his claims are typical of the class because they arise from the same challenged transaction and consumer-reporting procedures, that Plaintiff and his counsel will adequately represent the class, and that class treatment under Rule 23(b)(3) is superior to individual litigation because common issues predominate. *Id.* ¶¶ 139–41.

On July 8, 2026, Defendants filed their Motion to Deny Class Certification. ECF No. 104. Defendants contend that Plaintiff's proposed class is unascertainable under Rule 23 because determining membership would require extensive individualized proceedings under the Federal Arbitration Act ("FAA") to determine whether putative members are bound by a CreditWorks agreement. ECF No. 105 at 7–11. Defendants also contend that the same individualized contract formation issues that render the class unascertainable also prevent Plaintiff from satisfying Rule 23's requirements of commonality, typicality, adequacy, predominance, and superiority. *Id.* at 12–18. Finally, Defendants contend that the defect in Plaintiff's proposed class is apparent from the face of the class definition and cannot be cured through further factual development because membership itself depends on resolving individualized contract-formation disputes. *Id.* at 19–21.

Plaintiff filed his Opposition on July 22, 2026, arguing that the proposed class is ascertainable through objective criteria and Defendants' own records, and that common questions concerning Defendants' uniform enrollment procedures and alleged violations of the FCRA predominate over any individualized issues. ECF No. 108 at 8–19. Plaintiff further contends that Defendants' speculative arbitration and contract-formation arguments do not warrant denial of class certification at the pleading stage because the proposed class consists of consumers who did

not open the CreditWorks accounts, and any individualized disputes can be addressed through discovery and subsequent class-management procedures. *Id.* at 19–30.

Defendants filed their reply on July 28, 2026. ECF No. 109. Defendants maintain that the proposed class definition is unworkable under Rule 23 and Fourth Circuit jurisprudence, namely because class membership cannot be established without individual FAA proceedings. *Id.* at 3–11.

**C. Motion to Stay Discovery**

On July 20, 2026, Defendants filed their Motion to Stay Discovery, arguing that all discovery should be stayed—or, alternatively, a protective order be issued—pending the resolution of their Motion to Deny Class Certification and planned Motion for Judgment on the Pleadings. ECF No. 106. Defendants contend that both motions raise threshold, potentially dispositive legal issues that require no discovery and could substantially narrow or eliminate the need for classwide discovery. ECF No. 107 at 7–9. They further contend that proceeding with Plaintiff's extensive discovery requests in the meantime would impose substantial burden and expense. *Id.* at 9–12.

Plaintiff filed his Opposition to the Motion to Stay Discovery on July 29, 2026, arguing that Defendants have not shown good cause for a stay in part because neither of Defendants' pending motions is likely to succeed without discovery or would eliminate the need for discovery on Plaintiff's individual claims. ECF No. 110 at 5–9. Plaintiff further contends that a stay would substantially prejudice him by delaying access to evidence within Defendants' exclusive control. *Id.* at 9–12.

Defendants filed their reply in support of the Motion to Stay Discovery on August 11, 2026, maintaining that Plaintiff would suffer no cognizable prejudice from a temporary stay while proceeding with the extensive classwide discovery would impose substantial burdens on

Defendants and waste party and judicial resources. ECF No. 122 at 7–9. Accordingly, the Motions are ripe for disposition.

## II. LEGAL STANDARD

### A. Motion for Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings under Rule 12(c) is assessed under the same standards as a motion to dismiss under Rule 12(b)(6)." *Occupy Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013). The motion "should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). The motion "tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact." *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014). Thus, judgment on the pleadings is appropriate where "all material allegations of fact are admitted . . . in the pleadings and only questions of law remain." *Penn-America Ins. Co. v. White Pines, Inc.*, 476 F. Supp. 3d 354, 359 (E.D. Va. 2020) (citation omitted).

The Court considers the complaint, the answer, written instruments attached to them, and—narrowly—a document "integral to the complaint" whose authenticity no party disputes. *Occupy Columbia*, 738 F.3d at 116; *see Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). The pleadings on a Rule 12(c) motion should be construed in the light most favorable to the non-movant. *See Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002)

("[W]e assume the facts alleged in the complaint are true and draw all reasonable factual inferences in [the non-movant's] favor.").

**B. Motion to Deny Class Certification**

For class certification, a plaintiff must satisfy the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy—and one of the categories of class actions set forth in Rule 23(b). Rule 23(c)(1)(A) directs courts to determine "[a]t an early practicable time" whether a proposed class satisfies Rule 23's requirements. Fed. R. Civ. P. 23(c)(1)(A). District courts may deny certification at the pleading stage where "the complaint's allegations fail to satisfy Rule 23(a) and (b)'s requirements as a matter of law." *Oliver v. Navy Fed. Credit Union*, 167 F.4th 106, 114 (4th Cir. 2026).

**C. Motion to Stay Discovery**

Under Federal Rule of Civil Procedure 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from . . . undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery; [or] (B) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery." Fed. R. Civ. P. 26(c)(1)(A)–(B). District courts have broad discretion to stay proceedings incident to their power to control their own dockets. *Clinton v. Jones*, 520 U.S. 681, 706 (1997).

## III. DISCUSSION

**A. Motion for Judgment on the Pleadings**

Defendants seek to dismiss with prejudice Counts IV through VIII of the Amended Complaint, which assert claims under the FCRA and state negligence law arising from Defendants' alleged disclosure of Plaintiff's consumer credit file to an identity thief through the CreditWorks platform. *See* ECF No. 114 at 4. Defendants' overarching contention is that the entity operating

CreditWorks is not a CRA when it provides a consumer access to his own credit file, that Plaintiff authorized the challenged transaction through his written instructions, that Defendants had reason to believe the request was permissible, that the class claims fail to adequately allege willfulness, and that Plaintiff's state-law negligence claim is preempted. *See id.* at 2–4.

These arguments are based in large part on Defendants' characterization of the challenged transaction as the delivery of a consumer's own credit file to that consumer. *See id.* at 3, 6, 9. The Amended Complaint, however, alleges something different: Defendants delivered Plaintiff's entire consumer credit file to an identity thief who enrolled in CreditWorks using personal identifying information that did not correspond to Plaintiff's information on file. ECF No. 39 at ¶¶ 109–18, 121. Defendants' repeated reliance on the premise that the requester was the consumer does not resolve Plaintiff's explicit allegations that the requester was an imposter. Nor can the Court resolve, in Defendants' favor, the factual disputes concerning the nature of the transaction, the relationship between the Defendants, the adequacy of their procedures, their reason to believe the request was permissible, or their knowledge of the alleged vulnerabilities.

At this stage in proceedings, dismissing with prejudice Counts IV through VIII is inappropriate. The Amended Complaint's well-pleaded allegations, taken as true and construed in Plaintiff's favor, do not establish that Defendants are entitled to judgment as a matter of law. The Court addresses Defendants' arguments in turn.

*i. Counts IV, V, and VI: Consumer Reporting Agency and Self-Access Arguments*

Defendants first argue that Counts IV, V, and VI fail because ECS is not a CRA under the FCRA when it provides a consumer access to his own credit information. *See* ECF No. 114 at 5–7. Under the FCRA, "[t]he term 'consumer reporting agency' means any person which, for monetary fees, dues or on a cooperative nonprofit basis, regularly engages in whole or in part in

the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f) (emphasis added). According to Defendants, ECS furnished credit information to the consumer rather than to a third party, and information provided to the consumer about himself does not make the provider a CRA. *See id.* at 6. Because the Amended Complaint concludes, without factual support, that ECS furnished credit reports to third parties, Defendants contend Counts IV, V, and VI fail as a matter of law. *See id.* at 7.

The Amended Complaint alleges that CreditWorks delivered Plaintiff's "entire consumer credit disclosure" to an identity thief—someone who was not Plaintiff—and that Defendants' "insufficient online security and lackadaisical identity verification allowe[ed] identity thieves to access entire consumer credit files of unsuspecting individuals." ECF No. 39 at ¶¶ 110, 113. It further alleges that the imposter enrolled using an address associated with an uninhabited North Carolina property that had never been associated with Plaintiff, along with an email address not associated with Plaintiff. *Id.* ¶¶ 113–15. Then, the imposter allegedly used Plaintiff's stolen information to open a fraudulent Verizon account that appeared on Plaintiff's consumer credit report. *Id.* ¶¶ 116–18. Thus, Plaintiff does not allege that Defendants disclosed consumer credit information to that consumer: he alleges that Defendants furnished his credit file to a third party, someone else who falsely represented himself as Plaintiff.

Defendants' reliance on cases addressing a CRA's delivery of a consumer's own file does not resolve that distinction because they involve materially different circumstances—notably, defendants who provided consumer credit information to *consumers*. *See Howard v. Blue Ridge Bank*, No. C 04-04619 SI, 2005 WL 1865418, at *2 (N.D. Cal. Aug. 1, 2005) ("[T]hose entities

which gather and analyze credit information for the purpose of distributing it to third parties are credit reporting agencies, even if they also distribute the information to the consumers themselves. By contrast, this defendant never gives such information to third parties."); *Miller v. Trans Union, LLC*, 644 F. App'x 444, 447 (6th Cir. 2016) ("[Plaintiff] then sought to obtain a consumer disclosure of her credit file to review the suspected Mobiloans credit inquiry. Although Miller initially navigated to the Federal Trade Commission website and then to annualcreditreport.com, she admits that she eventually navigated away from annualcreditreport.com and "went to a TransUnion website." . . . What she ordered was the October 2013 Report from TUI." (citation omitted)). These cases do not establish that an alleged disclosure to an *identity thief* is treated as a disclosure to the consumer himself. One of Defendants' authorities recognized as much by explaining that the production of a consumer's credit file to the consumer himself is "distinctly different" from producing that information to a third party. *See Miller*, 644 F. App'x at 447 ("TUI, the furnisher of the October 2013 Report, is a wholly-owned subsidiary of Trans Union that is in the business of providing consumers a tool to monitor their own credit information as though they were a third party, a distinctly different product from that offered by Trans Union. . . . Thus, when a consumer requests a 'credit monitoring report' (what TUI titles its reports), TUI furnishes a report that reflects the information a third party would receive if it solicited his or her consumer credit report, as that term is defined in 15 U.S.C. § 1681b." (citations omitted)).

Likewise, *Kauffman v. Kauffman*, No. CV-17-04463, 2018 WL 2463945 (D. Ariz. June 1, 2018), does not compel dismissal here. The court in *Kauffman* dismissed a complaint that failed to allege facts concerning the circumstances of the access. *See Kauffman*, 2018 WL 2463945, at *5 ("Plaintiff has not alleged sufficient facts to allow the Court reasonably to infer that Trans Union furnished a 'consumer report' as defined in § 1681a(d) in violation of § 1681b. The [first

amended complaint] does not clearly articulate the circumstances under which the reports were obtained, and Plaintiff's briefing on this motion fails to clarify exactly what her legal theory is."). Unlike in *Kauffman*, Plaintiff's Amended Complaint supplies those missing details: the circumstances of the fraudulent enrollment and access, the alleged practice of furnishing reports to imposters, and the subsequent fraudulent account that was created by this access are all alleged with sufficient facts. *See* ECF No. 39 at ¶¶ 95, 100–03, 113–18. Defendants' reliance on *Reyna v. Credit Karma, LLC*, No. 26-CV-00019, 2026 WL 684098 (N.D. Cal. Mar. 11, 2026), is also unpersuasive at this stage, where Plaintiff has pleaded specific facts concerning the alleged disclosure. *See* ECF No. 114 at 6–7 (citing *Reyna*); *Reyna*, 2026 WL 684098, at *1 ("[Plaintiff] has not alleged that Credit Karma . . . furnishes 'consumer reports' to 'third parties.'").

The Amended Complaint also alleges that CreditWorks operates as part of an integrated platform "with Experian and other third-parties" that "assembles and evaluates consumer credit information for the purpose of furnishing consumer reports to third parties on its single integrated website[.]" ECF No. 39 at ¶¶ 95. Defendants contend that Plaintiff's allegations of integration do not alter Defendants' self-access argument because the doctrine turns on the function of the CreditWorks product, not the corporate structure behind it. *See* ECF No. 120 at 6 ("Even if the Court accepts every integration allegation as true—one website, one database, one dispute pipeline, one brand—the self-access doctrine still applies, because the function of CreditWorks as pleaded is to deliver a consumer his own file." (citing *Howard*, 2005 WL 1865418 at *2; *Miller*, 644 F. App'x at 452–53)). But Defendants' argument still rests on the premise that the person who received the consumer's credit information was the consumer himself—a fact that the Amended Complaint does not allege. As discussed, the Amended Complaint plainly alleges that

CIC delivered Plaintiff's "entire consumer credit disclosure" to an identity thief and third party—not to Plaintiff himself. *See* ECF No. 39 at ¶ 113.

As support for his integration theory, Plaintiff points to Defendants' own litigation conduct, in which they have "litigated as one when unity served them; only now, facing CRA liability, do they discover a corporate boundary." *See* ECF No. 118 at 13. Although Defendants' litigation positions do not necessarily establish that they are an integrated CRA, the alleged integration of their operations and their respective roles in the challenged transaction raise disputed facts that prevent this Court from accepting Defendants' preferred characterization as a matter of law. *See* ECF No. 39 at ¶¶ 95–112.

The Amended Complaint plausibly alleges that the challenged transaction involved the furnishing of Plaintiff's consumer report to a third party, not a disclosure to Plaintiff himself. Defendants' re-characterization of these allegations provides no basis for judgment on the pleadings as to Counts IV, V, or VI.

*ii. Count IV: Written Authorization and Permissible Purpose*

Defendants next argue that Count IV fails because Defendants furnished Plaintiff's credit file according to his written instructions authorizing access, which therefore gave ECS a complete permissible purpose under the FCRA to furnish his information. *See* ECF No. 114 at 7–9. Under the FCRA, "any consumer reporting agency may furnish a consumer report . . . [i]n accordance with the written instructions of the consumer to whom it relates." 15 U.S.C. § 1681b(a)(2). Defendants contend that when a consumer enrolls in CreditWorks and accepts the platform's Terms of Use, they are providing written instructions for ECS and its service providers to obtain the consumer's credit information. *See* ECF No. 114 at 7–8 (noting that CreditWorks's Terms of Use has the section "FCRA PERMISSIBLE PURPOSE AND CONSENTS," informing consumers

of their written instructions). Defendants further argue that for class members whose accounts were opened by an imposter, the imposter's acceptance of the Terms of Use gave Defendants every reason to believe that the person requesting the credit report was authorized to access his own file. *See* ECF No. 114 at 9 ("Enrollment through CreditWorks, and the authorization that enrollment supplies, obviously gave ECS every reason to believe the request was permissible." (citation omitted)).

That argument again assumes the truth of a disputed premise: that the person who enrolled in CreditWorks was Plaintiff. The Amended Complaint alleges that an identity thief enrolled in Plaintiff's name using personally identifying information that did not correspond to Plaintiff's information on file, and the putative class is defined as individuals who "did not in fact open the CreditWorks account." *See* ECF No. 39 at ¶¶ 113–15, 136 (on page 26). Those allegations support a reasonable inference that the alleged authorization did not come from Plaintiff and that the enrollment process failed to distinguish the imposter from the actual consumer.

Additionally, whether Defendants had reason to believe that the requester was Plaintiff and whether their reliance on the purported authorization was reasonable in light of the available information is a question of fact that cannot be resolved on the pleadings. *See Cortez v. Trans Union, LLC*, 617 F.3d 688, 709 (3d Cir. 2010) ("[T]he reasonableness of a [CRA's] procedures is 'normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question.'" (quoting *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004))); *Riddick v. Chex Sys., Inc.*, No. 2:24-cv-700, 2025 WL 2901542, at *2 (E.D. Va. Oct. 10, 2025) ("And a jury must consider whether the defendant's procedures were reasonable in context, not in a vacuum." (citation omitted)). The existence of written instructions does not, by itself, establish that the challenged disclosure was authorized or that Defendants had a permissible purpose. *See*

*Jackson v. Trans Union, LLC*, No. 3:24-cv-1069, 2026 WL 1558265, at *6 (W.D.N.C. June 2, 2026) ("A review of these cases reinforces that, at its core, whether a CRA forms a 'reason to believe' depends on the specific facts of the case. Accordingly, bright-line rules—such as certification alone provides 'reason to believe'—would be inappropriate."); *see also Pintos v. Pacific Creditors Ass'n*, 605 F.3d 665, 677 (9th Cir. 2010) (explaining that, under § 1681e(a), "a subscriber's certification cannot absolve the reporting agency of its independent obligation to verify the certification and determine that no reasonable grounds exist for suspecting impermissible use"). Courts in this District also recognize that whether a permissible purpose existed is a fact-dependent inquiry and may preclude dismissal when the complaint alleges enough facts to suggest no permissible purpose existed. *See, e.g.*, *Miller v. Dish Network, L.L.C.*, 326 F. Supp. 3d 51, 65–66 (E.D. Va. 2018) ("[T]he 'reason to believe' standard does not save a defendant from ambiguity in the law . . . . Rather, the standard operates to provide a defendant with a legally permissible purpose where the facts would reasonably lead it to believe that it had such a purpose. . . . (citations omitted)); *Cappetta v. GC Servs. Ltd. P'ship*, 654 F. Supp. 2d 453, 463 (E.D. Va. 2009) ("The Court has applied a reasonableness standard based upon *Yohay* finding that Plaintiff has stated a claim if she alleges sufficiently that Defendant negligently averred a permissible purpose. She has done so.").

Further, the Amended Complaint alleges circumstances that, if established, may undermine Defendants' assertion that they had every reason to believe the requester had a permissible purpose. For example, Plaintiff alleges that despite attempting to notify CIC about fraudulent accounts resulting from vulnerabilities in the enrollment system, CIC "failed to take the complaints seriously, failed to conduct any investigation, and continued to report the resulting fraudulent often negatively reporting accounts that had been set up as a result of Experian's improperly secured

website." ECF No. 39 at ¶ 112. Plaintiff also alleges that his account was created using an email address and a signup address that had never been associated with him. *Id.* ¶¶ 113–15. Plaintiff then alleges that when he attempted to dispute the fraudulent Verizon account opened in his name, Defendants ignored him. *Id.* ¶ 119. Taken as true, these allegations support a reasonable inference that Defendants did not have "every reason to believe" the requester was Plaintiff and that the disclosure of his credit information was permissible. *See* ECF No. 114 at 9.

Defendants are not entitled to judgment on Count IV based on written authorization or permissible purpose. The Amended Complaint goes beyond alleging that a consumer suffered identity theft; rather, it alleges that the enrollment process used identifiers inconsistent with information already available to Defendants, that Defendants had vulnerabilities in their enrollment system that allowed unauthorized access, and that they failed to respond adequately to complaints about the problem generally and to Plaintiff's complaint specifically. Whether those circumstances gave Defendants reason to believe that the request was permissible is a factual question that cannot be resolved on the pleadings.

*iii. Count V: Unreasonable Procedures Under § 1681e(a)*

Defendants separately argue that Count V fails because the Amended Complaint does not identify a "specific procedure" that Defendants lacked. *Id.* Defendants characterize Plaintiff's allegation that ECS "failed to maintain reasonable procedures" as conclusory and contend that "[t]he allegation that a fraudster succeeded states no procedural failure." *Id.* (citing ECF No. 39 at ¶ 138).

The Amended Complaint, however, identifies several alleged procedural failures in Defendants' enrollment, verification, and dispute-handling practices. Section 1681e(a) requires a CRA to "maintain reasonable procedures designed to . . . limit the furnishing of consumer reports

to the purposes listed under section 1681b[.]" 15 U.S.C. § 1681e(a). The Amended Complaint specifically alleges that Defendants had "insufficient online security and lackadaisical identity verification" that "allow[ed] identity thieves to access entire consumer credit files" (ECF No. 39 at ¶ 110); "failed to take complaints [of fraud] seriously, failed to conduct any investigation, and continued to report the resulting fraudulent often negatively reporting accounts that had been set up as a result of Experian's improperly secured website" (*id.* ¶ 112); had "identification verification vulnerabilities that allow[ed] identity thieves to access consumer credit files" (*id.* ¶ 109); failed to compare "personally identifying information that did not actually belong to Plaintiff Kontodiakos" provided during the enrollment process against information in Plaintiff's file, which would have shown inconsistencies in the home address and email address being used (*id.* ¶¶ 113–15); and ignored Plaintiff's complaints about the fraudulent account opened in his name (*id.* ¶ 119). These allegations identify specific procedures that Plaintiff argues were unreasonable and explain why they allegedly failed to prevent the furnishing of entire consumer credit files for impermissible purposes.

Additionally, whether Defendants' procedures were reasonable is yet another factual question that cannot be resolved on the pleadings. As the Fourth Circuit has explained, whether a CRA "failed to follow 'reasonable procedures' will be a 'jury question[] in the overwhelming majority of cases.'" *Dalton v. Capital Associated Industries, Inc.*, 257 F.3d 409, 416 (4th Cir. 2001) (quoting *Guimond v. Trans Union Credit Information Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995)). Here, the Court cannot determine, on the face of the pleadings, whether Defendants' enrollment process, verification, and dispute-handling practices were reasonable as a matter of law.

Because Plaintiff has adequately alleged specific procedural failures that plausibly allege a violation of § 1681e(a), Defendants are not entitled to judgment on Count V.

*iv. Counts VI and VII: Reseller and Permissible-Purpose Arguments*

Defendants argue that, in addition to the previously discussed not-a-CRA, written-instructions, and permissible-purpose arguments, Counts VI and VII each fail for an additional, independent reason. Defendants contend that Count VI fails because Plaintiff has not alleged an undisclosed resale but rather a transaction involving self-access of the credit file. ECF No. 114 at 9. Defendants characterize the Amended Complaint as alleging that an imposter accessed the consumer's own credit file through CreditWorks rather than alleging the file was procured for resale to an "undisclosed third party." *Id.* They also contend that Count VII fails because identity theft alone does not establish that a CRA lacked a permissible purpose, especially where "[t]he file was obtained through a consumer-facing product, pursuant to the consumer's written instructions, in a transaction that gave ECS reason to believe the request was permissible." *Id.* at 10.

Neither argument warrants judgment on the pleadings. Regarding Count VI, Defendants again conflate the identity of the purported account holder with the identity of the actual recipient. As discussed *supra*, the Amended Complaint alleges that CIC delivered Plaintiff's entire consumer credit filed to an identity thief who was not Plaintiff. ECF No. 39 at ¶¶ 109–18. Because the imposter enrolled in a consumer-facing service using Plaintiff's personally identifying information does not make this an allegation of self-access. The Amended Complaint repeatedly and expressly alleges that the report was delivered to a stranger masquerading as the consumer, not that Plaintiff received his own file. *See, e.g.*, *id.* ¶ 4.

Defendants' argument that Plaintiff failed to plead a resale transaction is unpersuasive. Count VI is brought as a violation of § 1681e(e), which prohibits the procurement of a consumer

report for purposes of reselling it or any information within it "unless the [requester] discloses to the [CRA] . . . (A) the identity of the end-user of the report (or information); and (B) each permissible purpose under section 1681b . . . for which the report is furnished to the end-user of the report (or information)." 15 U.S.C. § 1681e(e)(1). The Amended Complaint alleges that Defendants operate an integrated platform that "assembles and evaluates consumer credit information for the purpose of furnishing consumer reports to third parties" and that the challenged transaction occurred through that operation. ECF No. 39 at ¶ 95; *see id.* at ¶¶ 100–03, 109–18. Although Plaintiff must ultimately establish that the transaction satisfies the requirements of § 1681e(e), the Court cannot reject Count VI by adopting Defendants' characterization of the transaction as self-access when the Amended Complaint repeatedly alleges that an identity thief obtained Plaintiff's file. Accordingly, Defendants have not established that Count VI fails as a matter of law for lack of an adequately pleaded resale transaction.

Regarding Count VII, Defendants reiterate that they had reason to believe the request was permissible because the requester enrolled through CreditWorks and requested the consumer report pursuant to written instructions. *See* ECF No. 114 at 10. For the reasons explained *supra*, that argument depends on disputed factual questions concerning the identity of the requester, the information available to Defendants, and the reasonableness of their asserted belief. *See supra* Section III.A.ii. The Amended Complaint alleges that the enrollment information did not correspond to Plaintiff's information on file and that Defendants failed to address known identification verification vulnerabilities and complaints of fraudulent accounts. *See* ECF No. 39 at ¶¶ 109–15. Those allegations plausibly support Plaintiff's argument that the credit report was furnished without a permissible purpose.

While the Court is not determining whether Plaintiff can ultimately establish each element of Counts VI and VII, it concludes only that Defendants have not shown that their preferred characterization of the challenged transaction or their asserted permissible-purpose argument can be accepted as a matter of law on the pleadings.

*v. Counts IV Through VII: Willfulness*

Defendants contend that Plaintiff's class claims cannot support statutory or punitive damages because the Amended Complaint does not adequately allege willful violations of the FCRA. ECF No. 114 at 10. Defendants characterize Plaintiff's allegation that the violation was "negligent, reckless, knowing, or intentionally committed in conscious disregard of the rights of the Plaintiffs and putative Class members" as conclusory and argue that accepting Plaintiff's theory would effectively impose strict liability for every identity-theft-related disclosure. *Id.* (quoting ECF No. 39 at ¶ 138).

The Court disagrees. The Amended Complaint does not solely rely on one assertion that Defendants acted willfully. It alleges a specific course of conduct beginning with Defendants' website containing "identification verification vulnerabilities" allowing for identity theft and ending with Defendants receiving notice that those vulnerabilities were allowing identity theft but nevertheless "fail[ing] to conduct any investigation[.]" ECF No. 39 at ¶¶ 109, 112. Plaintiff also alleges a broader history of notice concerning Defendants' credit-reporting and dispute-investigation practices, including consumer complaints, litigation history, regulatory action by the CFPB, and findings concerning allegedly deficient practices. *Id.* ¶¶ 44–68 (detailing a history that includes "many thousands of disputes and other complaints," "over 570,000 consumer credit reporting complaints" sent by the CFPB to Experian, and "over 2,000" lawsuits alleging FCRA violations filed against Experian "in the last twelve (12) months alone"). Counts IV through VII

incorporate those paragraphs and assert that the challenged violations were willful. *Id.* at ¶¶ 136–54 (alleging willful violations of the FCRA by, for example, "willfully and recklessly accessing, attaching, publishing and selling Plaintiffs' and Nationwide Class members' credit profile without a permissible purpose or authorization under the FCRA," "failing to make reasonable efforts to implement procedures that would verify the identity of a new or prospective user," "procuring consumer reports for the purpose of resale (or any information in the report)" and "fail[ing] to disclose the identity of the end-user of the report," and obtaining consumer reports "without an authorized purpose in accordance with [§] 1681b").

Taken together, these allegations describe more than a negligent failure to detect one instance of identity theft. The FCRA distinguishes between willful and negligent noncompliance: a consumer may recover compensatory damages or statutory damages of not more than $1,000, punitive damages, and attorneys' fees for willful violations, but only compensatory damages and attorneys' fees for negligent violations. 15 U.S.C. §§ 1681n(a), 1681o. Here, the Amended Complaint plausibly alleges that Defendants' conduct was willful rather than negligent. Plaintiff alleges not only that Defendants had identification verification vulnerabilities that allowed for identity theft but also that they received substantial notice of these vulnerabilities and failed to adequately investigate consumer complaints. *See* ECF No. 39 at ¶¶ 44–68, 109. These allegations support a plausible inference that Defendants knew of the risks associated with their enrollment process and nevertheless failed to adequately address them.

Additionally, under *Safeco Insurance Co. of America v. Burr*, willfulness under the FCRA includes recklessness. 551 U.S. 47, 57 (2007) ("The standard civil usage thus counsels reading the phrase 'willfully fails to comply' in § 1681n(a) as reaching reckless FCRA violations[.]"). "[A] company subject to FCRA does not act in reckless disregard of it unless the action is not only

a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69. At this stage, Plaintiff's allegations concerning the known vulnerabilities, prior complaints, alleged failure to investigate, and continued utilization of the challenged system plausibly support an inference of reckless disregard. Whether Defendants' conduct met the governing standard for willfulness is a matter that cannot be resolved in Defendants' favor on the pleadings.

*vi. Count VIII: The Negligence Claim*

Finally, Defendants argue that Plaintiff's common-law negligence claim is preempted by the FCRA because it arises from the same conduct underlying Plaintiff's statutory claims—ECS's handling and disclosure of credit information through CreditWorks—and does not allege malice or willful intent to injure. ECF No. 114 at 11.

The FCRA bars claims "in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information" against a CRA "except as to false information furnished with malice or willful intent to injure." 15 U.S.C. § 1681h(e). Thus, determining whether Count VIII is preempted is a two-step inquiry. "First, we ask whether the claim falls within the scope of § 1681h(e), which includes only claims 'based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report.'" *Ross v. F.D.I.C.*, 625 F.3d 808, 814 (4th Cir. 2010). "The second step in the analysis involves determining whether the 'malice or willful intent to injure' exception to the general bar against state law actions applies." *Id.* (quoting 15 U.S.C. § 1681h(e)).

Count VIII concerns Defendants' alleged failure to secure consumers' private, personal information against foreseeable unauthorized access. *See* ECF No. 39 at ¶¶ 163 ("Furthering their dilatory practices, CIC failed to provide adequate supervision and oversight of the Personal Information with which they are entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted an unknown third party to gather Personal Information of Plaintiffs and Class members, misuse the Personal Information and intentionally disclose it to third-parties without consent."); *id.* ¶ 166 ("CIC breached its duties to Plaintiffs and Class members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Personal Information of Plaintiffs and Class members."); *id.* ¶ 172(d) (alleging that CIC breached its duties by "failing to comply with the minimum industry standard data security protocols prior to and during the period of the ongoing Data Breach"). Said differently, Plaintiff's negligence claim is based on Defendants' alleged failure to maintain adequate data security, *not* their negligent reporting of information to third parties. Although the alleged data breach may have involved the unauthorized disclosure of consumer credit information, that does not transform the underlying data-security claim into one alleging negligence "with respect to the reporting of information" within the meaning of § 1681h(e). Accordingly, Count VIII does not fall within the category of claims that § 1681h(e) expressly preempts.[2]

Defendants have not demonstrated that the foregoing disputes—such as their status as CRAs, whether they had reason to believe the requester of Plaintiff's credit information had a

[2] Because the Court concludes that Count VIII does not allege negligence "with respect to the reporting of information" within the meaning of § 1681h(e), it need not reach the separate question of whether the Amended Complaint sufficiently alleges that Defendants acted with "malice or willful intent to injure." 15 U.S.C. § 1681h(e). This question becomes relevant only if the claim first falls within the types of claims subject to § 1681h(e)'s preemption provision. *See Ross v. F.D.I.C.*, 625 F.3d 808, 814 (4th Cir. 2010) ("Even if we assume arguendo that § 1681h(e) applies, Ross cannot meet the second step of the analysis.").

permissible purpose, and whether their conduct was willful—can be resolved in their favor as a matter of law on the pleadings. Accordingly, Defendants' Motion for Judgment on the Pleadings as to Counts IV through VIII is **DENIED**.

**B. Motion to Deny Class Certification**

The parties' dispute turns on whether the proposed class definition makes the enforceability of an arbitration agreement a prerequisite to class membership. Defendants contend that it does because the class includes consumers who "did not in fact open" their CreditWorks accounts, which—according to Defendants—requires individualized proceedings under the FAA into whether each consumer authorized the account and became bound by an arbitration agreement. *See* ECF No. 105 at 2–3 ("Before any person can be identified as a member of Plaintiff's proposed class, the Court must first determine whether that person actually entered into a CreditWorks agreement, later ratified that agreement through subsequent conduct, accepted benefits under the agreement, or otherwise became bound by its terms under applicable state law."). Plaintiff contends that the class is defined to exclude "every person who genuinely enrolled" in CreditWorks, leaving only those individuals who are strangers to any arbitration agreement as members of the class. ECF No. 108 at 20. Plaintiff argues that, therefore, the relevant inquiry is whether the putative class member actually opened the account, not whether the consumer is legally bound by an arbitration agreement. *See id.* At this stage, the Court agrees with Plaintiff.

The Amended Complaint defines the nationwide class as:

> All natural persons who (a) were the subject of a consumer report furnished by Experian to CIC within the five years before the filing of this action; (b) where CIC furnished the report to a third party; (c) where the consumer about whom the report related disputed the tradeline(s) for an account(s) opened on or after the date on which CIC records show the person as having signed up for CreditWorks based on a claim of not his/hers, identity theft or fraud; (d) where the consumer did not in fact open the CreditWorks account (the "Nationwide Class")

ECF No. 39 at ¶ 136. Importantly, the class definition is limited to consumers who disputed one or more tradelines for an account that CIC's records reflect was opened in their name through CreditWorks, but that the consumer alleges was opened by someone else through identity theft or fraud. Inexplicably, Defendants seem to consistently omit the criteria that the class definition requires, namely, that CreditWorks' own records must establish that the consumer disputed the account on the grounds that someone else opened it. If CreditWorks' records show that such a dispute was lodged, then the consumer may be a putative member of the class that necessarily would not be bound by any arbitration agreement. The proposed definition does *not* condition class membership on whether a consumer entered into or is legally bound by an arbitration agreement, nor does it require a determination that any arbitration agreement is unenforceable. It simply asks: did the consumer lodge a dispute with CreditWorks that an account opened in their name was not in fact opened by them?

Based on that definition and not Defendants' reframing of the proposed class, and for the foregoing reasons, denial of class certification is inappropriate at this stage in the proceedings. The Court addresses Defendants' arguments in turn.

*i. Class Membership is Ascertainable Without Individualized FAA Proceedings*

Defendants' argument that class membership is unascertainable assumes that determining whether a consumer "did not in fact open" a CreditWorks account necessarily requires a legal determination of whether the consumer nevertheless entered into an arbitration agreement. *See* ECF No. 105 at 8 ("Whether a consumer 'did not in fact open' a CreditWorks account is a question of contract formation." (citation omitted)). But those are distinct inquiries. Subsection (d) of the proposed class definition asks whether the consumer actually opened the account—not whether

the consumer is legally bound by any arbitration agreement associated with enrollment. *See* ECF No. 39 at 26. A consumer whose identity was stolen to open a CreditWorks account may satisfy this membership requirement even if Defendants argue that the consumer later ratified the arbitration agreement or otherwise became bound by its terms. Thus, the individualized FAA proceedings that Defendants contend are required in order to determine class membership concern the enforceability of arbitration agreements, not the factual criteria Plaintiff uses to define the class. Whether a consumer actually authorized the opening of their CreditWorks account and lodged a dispute that they had not bears on class membership. Whether that consumer subsequently ratified an agreement, accepted contractual benefits, or otherwise agreed to arbitration is a separate question. Those issues may become relevant if Defendants later seek to enforce an arbitration agreement against an identified consumer but are unnecessary to identify class members as the class is defined in the Amended Complaint.

Defendants contend that resolving these issues and determining class membership "requires individualized legal adjudications" under Section 4 of the FAA ("Trial Provision"). ECF No. 109 at 9; *see* ECF No. 105 at 8–9 ("The proposed class therefore consists entirely of persons who dispute the existence of an arbitration agreement. That fact triggers Section 4 of the FAA. . . . The Fourth Circuit mandates that a 'court is obliged to conduct a trial under the Trial Provision when a party unequivocally denies that an arbitration agreement exists, and show[s] sufficient facts in support thereof.'" (quoting *Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019) (internal quotation omitted))). But the enforceability of an arbitration agreement is not part of the class definition. Whether consumers are bound by an arbitration agreement does not need to be adjudicated before their membership can be determined; rather, determining whether a consumer actually opened a CreditWorks account and lodged a dispute can be evaluated using

objective information that is currently available from CreditWorks. Plaintiff alleges that Defendants' own enrollment records identify consumers who signed up for CreditWorks and were associated with reports furnished to third parties, and that proposed class members can be identified through those same documents maintained by Defendants. ECF No. 108 at 23 (arguing that Defendants' "own enrollment records will show what they showed for Mr. Kontodiakos—identifiers that 'did not match and had never been associated with' the consumer"); ECF No. 39 at ¶ 137 ("The names and addresses of the Class members are identifiable through documents maintained by Defendants[.]"); *see id.* ¶ 121 ("Experian eventually withdrew the Motion to Compel [ECF No. 28], based upon its own investigation and determination that the personal identifying information used to access CreditWorks did not match and had never been associated with Plaintiff Kontodiakos."). As Plaintiff notes, "[t]he realistic universe of genuine formation disputes—consumers who actually enrolled but claim otherwise—is by definition *outside* the class, and any rare, colorable disputes at the margin is addressed through case-management tools[.]" ECF No. 108 at 23. At this stage, these allegations support Plaintiff's position that the relevant criteria for determining class membership can be evaluated using objective information concerning who actually opened the CreditWorks account and lodged a dispute.

The FAA may require individualized determinations when a party seeks to enforce an arbitration agreement and its existence or applicability is disputed. *See Berkeley Cnty. Sch. Dist.*, 944 F.3d at 234 ("Section 4 thus requires that the district court—rather than an arbitrator—decide whether the parties have formed an agreement to arbitrate. . . . In making such a decision, the court is obliged to conduct a trial under the Trial Provision when a party unequivocally denies 'that an arbitration agreement exists,' and 'show[s] sufficient facts in support thereof.'" (citing *Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015))). This is the

basis for Defendants' argument, that "because federal law *affirmatively requires* those individualized proceedings," "[t]he search to discover who, if any, of the millions of CreditWorks members did not enter into a contract with Experian because their CreditWorks account was opened by an unauthorized third party, obviously cannot be made 'in reference to objective criteria.'" ECF No. 105 at 11 (quoting *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014)). But Defendants conflate a potential need to resolve arbitration disputes with the inquiry necessary to identify class members based on the proposed class definition, which does not include consumers who actually opened the account and thus might be subject to an arbitration agreement. Although the FAA may require individualized proceedings to determine whether a consumer is bound by an arbitration agreement, it does not follow that those proceedings are necessary here to determine whether that consumer actually opened a CreditWorks account and lodged a dispute. Accordingly, Defendants have not shown that the FAA precludes identifying class members by reference to the objective criteria set forth in the Amended Complaint.

*ii. Individualized Issues Do Not Predominate Over Classwide Ones*

The Amended Complaint proposes a class under Rule 23(b)(2) and (b)(3). ECF No. 39 at ¶ 136. Under Rule 23(b)(2), a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). A 23(b)(3) class, however, is one that presents "questions of law or fact common to class members [that] predominate over any questions affecting only individual members, and that . . . is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.

R. Civ. P. 23(b)(3). The Amended Complaint alleges that certification under either provision of Rule 23 is appropriate.[3] *See* ECF No. 39 at ¶¶ 137–41.

Defendants argue that the same individualized FAA issues that purportedly render the class unascertainable also defeat the remaining substantive requirements for class certification under Rule 23 (commonality, typicality, adequacy, predominance, and superiority). ECF No. 105 at 12–18. Plaintiff argues that the common questions pleaded in the Amended Complaint—whether CIC had a permissible purpose to furnish consumer reports, whether Defendants maintained reasonable procedures, and whether their conduct was willful—can be answered by examining Defendants' uniform enrollment practices rather than each class member's individual circumstances. ECF No. 108 at 26–29.

Requests to deny class certification prior to any discovery occurring are evaluated "solely on the face of the complaint and ask whether the complaint's allegations fail to satisfy Rule 23(a) and (b)'s requirements as a matter of law." *Oliver*, 167 F.4th at 108. At this stage, Defendants

---

[3] The Amended Complaint seeks certification under both Rule 23(b)(2) and Rule 23(b)(3). ECF No. 39 ¶ 136. The parties' briefing, however, seems to focus primarily on whether the proposed class satisfies Rule 23(b)(3), particularly its predominance and superiority requirements, and does not clearly distinguish between the requirements of the two types of class action. *Compare* Fed. R. Civ. P. 23(b)(2) (defining one type of class action as one where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole"), *with* Fed. R. Civ. P. 23(b)(3) (defining another type of class action as one where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy").

Because Defendants' arguments concerning individualized arbitration issues principally address ascertainability, the predominance of common questions, and the superiority of class action compared to individual actions, the Court considers those arguments in the context of Rule 23(b)(3). To the extent Defendants also seek denial of certification under Rule 23(b)(2), they have not separately developed an argument explaining why the proposed class fails to satisfy that provision's requirements. The Court therefore does not separately address Rule 23(b)(2) beyond concluding that Defendants' asserted arbitration-related concerns do not, on the present record, establish that the proposed class is uncertifiable.

have not shown that the individualized arbitration and contract-formation issues they identify prevent the Amended Complaint from satisfying Rule 23 as a matter of law.

First, the Amended Complaint identifies common questions concerning permissible purpose, reasonable procedures, and willfulness. ECF No. 39 at ¶ 138 ("These common legal and factual questions include, among other things: (a) whether CIC had a statutorily permissible purpose to use the putative Class members' consumer reports; (b) whether CIC failed to maintain reasonable procedures designed to limit the furnishing of consumer reports to the purposes listed under section 1681b; (c) whether CIC's conduct constituted a violation of the FCRA; and (e) whether the violation was negligent, reckless, knowing, or intentionally committed in conscious disregard of the rights of the Plaintiffs and putative Class members.").[4] Plaintiff alleges that these questions arise from "a single automated enrollment pathway, with a single set of (allegedly deficient) verification procedures, through which every class member's file was furnished" identically. ECF No. 108 at 27. The Court agrees: the Amended Complaint's allegations sufficiently plead several common questions of law or fact—including whether Defendants had adequate procedures for opening CreditWorks accounts, verifying consumers' identities, investigating disputes, and furnishing consumer reports—that are "capable of classwide resolution" and whose answers "will resolve an issue that is central to the validity of each one of the claims in one stroke." *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Defendants' potential arbitration defenses would not eliminate these common questions because the Amended Complaint alleges that each consumer was treated identically by Defendants for the purposes of enrolling in CreditWorks, verifying their identity, and furnishing their consumer report. Thus, the Amended Complaint presents questions capable of classwide resolution,

[4] Paragraph 138 proceeds directly from subsection (c) to subsection (e); Plaintiff did not identify a subsection (d). ECF No. 39 at ¶ 138.

regardless of whether Defendants may later assert arbitration against particular consumers. *Cf. id.* at 352 ("Here respondents wish to sue about literally millions of employment decisions at once. Without some glue holding the alleged *reasons* for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored.*").

Second, Plaintiff alleges that these issues exist for all class members and that the claims arise from the same challenged practices and the same FCRA provisions. *Id.* ¶ 139 ("Plaintiff's claims are typical of the claims of each putative class member and all are based on the same facts and legal theories. Plaintiff, as every putative class member, alleges a violation of the same FCRA provisions, 15 U.S.C. §§ 1681b(a), 1681a(a), and 1681h(a). These claims challenge the consumer reporting procedures of Experian and do not depend on any individualized facts."). As with commonality, the possibility that Defendants may later assert arbitration defenses against individual consumers does not, on the face of the Amended Complaint, establish that Plaintiff's claims are atypical of the class. *See Wal-Mart Stores, Inc.*, 564 U.S. at 349 n.5 ("We have previously stated in this context that '[t]he commonality and typicality requirements of Rule 23(a) tend to merge.'" (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157–58 n.13 (1982))); *Custom Hair Designs by Sandy v. Central Payment Co., LLC*, 984 F.3d 595, 604 (8th Cir. 2020) ("When typicality and commonality arguments overlap significantly, the analysis for commonality largely determines typicality.").

Third, Plaintiff alleges that he "will fairly and adequately protect the interests of the class," that his counsel has experience "handling actions involving unlawful practices against consumers and class actions," and that neither Plaintiff nor counsel has interests that conflict with those of the class. *Id.* ¶ 140. Defendants argue that Plaintiff is subject to unique defenses concerning his own

account that "threaten to become the focus of the litigation," and that variations in class members' circumstances create conflicts that undermine adequacy. ECF No. 105 at 16. But these arguments again conflate whether a consumer actually opened a CreditWorks account with whether that consumer may be bound by an arbitration agreement—of these, only the former is factored into the class definition. Additionally, "[f]or a conflict of interest to defeat the adequacy requirement, 'that conflict must be fundamental.'" *Ward v. Dixie Nat. Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010) (quoting *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 430 (4th Cir. 2003)). "A conflict is not fundamental when . . . all class members share common objectives and the same factual and legal positions and have the same interest in establishing the liability of [the defendant]. Moreover, a conflict will not defeat the adequacy requirement if it is merely speculative or hypothetical[.]" *Id.* (citations and internal quotation marks omitted). Defendants' speculation that some consumers may be subject to different doctrines or may present stronger evidence than others does not establish that Plaintiff will not "fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4), or that class counsel will not "fairly and adequately represent the interests of the class," Fed. R. Civ. P. 23(g)(4).

Fourth, regarding Rule 23(b)(3)'s requirement that common questions predominate over individual ones, Defendants contend that the individual contract-formation issues that are purportedly necessary under the FAA would overwhelm any common questions. ECF No. 105 at 17 ("To the contrary, the arbitration issue must be addressed first because it determines whether the consumer belongs in the class at all. The need for individualized FAA proceedings is independently fatal to predominance."). But the proposed class definition does not make the enforceability of an arbitration agreement a condition of membership, as discussed *supra*. Even if individual questions may later arise regarding whether an arbitration agreement can be enforced

against a class member, that does not, on its own, defeat certification under Rule 23(b)(3). *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." (citation and internal quotation omitted)). Thus, the common questions concerning Defendants' enrollment procedures, consumer verification practices, and whether they violated the FCRA are "more prevalent or important than the non-common, aggregation-defeating, individual issues" that Defendants raise as potential problems. *See id.*

Fifth, regarding the superiority of a class action under Rule 23(b)(3), Plaintiff alleges that individual litigation "to obtain the statutory and punitive damages sought by each member would prove burdensome and expensive," and that a class action would efficiently resolve the common issues affecting consumers who are "otherwise disempowered" and cannot "afford to bring their claims individually." ECF No. 39 at ¶ 141. Defendants' anticipated arbitration defenses do not establish that individual actions would be superior to class treatment, particularly when the Amended Complaint's classwide claims concern Defendants' allegedly uniform practices and statutory damages under the FCRA are being sought. *See Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 274 (4th Cir. 2010) (rejecting the argument that FCRA statutory damages and fee-shifting make individual actions superior because "the low amount of statutory damages available" makes individual actions "unattractive from a plaintiff's perspective" and do not ensure enforcement of the FCRA as compared to a class action).

"Of course, discovery in this case might show that the [Amended Complaint's] allegations . . . are false." *National Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 195 (2024). But, as the Fourth

Circuit recently clarified, the question at this stage of proceedings is whether the Amended Complaint makes a "sufficient prima facie showing" of Rule 23's requirements for class certification. *See Oliver*, 167 F.4th at 116 (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). The Court finds that it does and that Defendants' motion to deny class certification therefore fails.

*iii. The Motion is Premature*

Finally, the parties dispute whether Defendants' Motion is appropriately resolved before discovery. ECF No. 105 at 19–21; ECF No. 108 at 29–30. Under *Oliver*, courts considering a pre-discovery motion to deny certification must evaluate if the failure to satisfy Rule 23 is apparent from the complaint as a matter of law. 167 F.4th at 114–16. *Oliver* permits early resolution of a class that is facially deficient—it does *not* require denial of class certification merely because discovery may reveal individualized issues or that the complaint's allegations are inaccurate. *See id.* at 116 ("Of course, discovery in this case might show that the [complaint's] allegations . . . are false and that [the defendant] employs a process that is neither uniform nor results in disparate impacts based on a loan applicant's race. . . . But as we have already explained, that is not the question at this stage." (citation and internal quotation omitted)).

Defendants have not shown, before discovery, that the Amended Complaint itself demonstrates that class certification is unavailable as a matter of law. Denial of class certification prior to any discovery being conducted is premature, as discovery may clarify the extent to which Defendants' records can identify class members, whether the alleged enrollment and consumer identification practices were uniform, and whether any individualized arbitration issues materially affect the requirements of Rule 23. Those questions can be addressed in the ordinary course of class discovery and class certification proceedings.

Accordingly, because Defendants have not established that the Amended Complaint "fails to allege facts sufficient to plausibly establish the existence of a certifiable class," the Court declines to deny class certification at this preliminary stage and will **DENY** Defendants' Motion to Deny Class Certification. *See id.* at 125 n.8.

### C. Motion to Stay Discovery

Defendants move to stay discovery pending resolution of their Motion for Judgment on the Pleadings and Motion to Deny Class Certification. ECF No. 106 at 2. Because the Court resolves both motions in this Order, Defendants' request for a stay pending resolution of those motions is **MOOT**.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motion for Judgment on the Pleadings and Motion to Deny Class Certification, ECF Nos. 104, 113, and **DENIES** and **DISMISSES AS MOOT** Defendants' Motion to Stay Discovery, ECF No. 106.

Further, the parties are **DIRECTED** to contact the courtroom deputy for the undersigned **within seven days** at (757) 222-7222 to schedule a new Rule 16(b) scheduling conference, which must be held **no later than December 2, 2026**.

The Clerk is **DIRECTED** to forward a copy of this Order to all counsel of record.

It is so **ORDERED**.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
November 3, 2026